*Diane M. Moore*, for appellee.

## A08A0623. DARWICKI v. THE STATE.
(661 SE2d 859)

ELLINGTON, Judge.

Following a bench trial, the State Court of Cobb County found Tina Darwicki guilty of driving under the influence of alcohol, OCGA § 40-6-391 (a), and improperly parking on the roadway, OCGA § 40-6-202.[1] Darwicki appeals from the judgment of conviction, challenging the sufficiency of the evidence, and contending the court erred in denying her motion to suppress. For the following reasons, we affirm in part and reverse in part.

1. Where, as here, the evidence at a hearing on a motion to suppress is uncontroverted and no question of witness credibility is presented, we review the trial court's application of the law to undisputed facts de novo. *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994). This Court's responsibility in reviewing the trial court's decision on the motion to suppress is to ensure that there was a substantial basis for the trial court's decision. *State v. McFarland*, 201 Ga. App. 495 (411 SE2d 314) (1991).

At about 1:30 a.m. on May 19, 2004, a Cobb County sheriff's deputy observed a car stopped in its lane of travel on Kipling Road, a two-lane road in a mixed commercial and residential area. The car was parked with its engine running and its headlights on, about 25 to 50 yards from the intersection with Lower Roswell Road, and in front of a closed business. Although the deputy was suspicious of the car, given that it was stopped in front of a closed business, he was also concerned that the driver might be having car trouble. The deputy parked behind the stopped car, turned on his emergency lights, got out of the patrol car, and approached the driver. As he approached, he detected the strong odor of an alcoholic beverage coming from the driver's open window. He asked the driver if her car was working properly, and she said "no."

Darwicki argues that when the deputy parked behind her and turned on the emergency lights, she was illegally seized as the deputy lacked reasonable articulable suspicion of criminal activity. We disagree.

The facts of this case are substantially similar to those of *Hutto v. State*, 259 Ga. App. 238, 238-239 (576 SE2d 616) (2003), where we

---

[1] The court also found Darwicki guilty of impeding the flow of traffic, OCGA § 40-6-184 (a) (1), and failing to park as close as practicable to the curb, OCGA § 40-6-200 (a), but merged those convictions with the conviction for improper parking.

held that an officer was authorized to approach a man who had stopped his motorcycle along a highway near midnight. Id. The officer was concerned that the motorcyclist needed assistance and that the stopped vehicle posed a potential hazard to other motorists. As we explained,

> Georgia recognizes three distinct levels or tiers of police-citizen encounters: verbal communications which involve no coercion or detention; brief "stops" or "seizures" which must be accompanied by a reasonable suspicion; and "arrests" which can only be supported by probable cause. In a first-tier verbal encounter, a police officer may approach a citizen, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officer does not detain the citizen or create the impression that the citizen may not leave. As we have consistently held, an officer's approach of a stopped vehicle and inquiry as to what is going on constitutes a first-tier communication, rather than a "stop" or "seizure" requiring reasonable suspicion.

(Punctuation and footnotes omitted.) Id. at 239.

In *Hutto*, we concluded that the officer's actions clearly fell "within the first level of police-citizen contact." Id. Further, we recognized that although the officer activated his blue emergency lights as he pulled behind Hutto, "given the late hour, the hazard presented by vehicles parked on the side of a dark highway, and [the officer's] offer of assistance, this fact did not create the impression that Hutto could not leave." (Footnote omitted.) Id. at 239-240. The same is true in this case. The deputy approached Darwicki's stopped car to find out what was going on. This first-tier encounter was not turned into a second-tier seizure simply because the deputy activated his blue lights. As in *Hutto*, given the late hour, the darkness, the deputy's intention to offer assistance, and that both the deputy and Darwicki were parked in the lane of travel, we cannot say that the blue lights created the impression that Darwicki was not free to leave. Therefore, the trial court did not err in denying the motion to suppress.

2. Darwicki contends the evidence was insufficient to support her conviction for improper stopping, standing, or parking outside of business or residential districts, OCGA § 40-6-202,[2] because the

---

[2] The statute provides that
[o]utside of a business or residential district, no person shall stop, park, or leave

State failed to adduce evidence that she was, as the statute requires, "outside of a business or residential district." We agree. The State adduced some evidence that Darwicki stopped her car *within* either a business, a residential, or mixed business and residential area. Since OCGA § 40-6-202 applies to improper stopping "outside of a business or residential district," and the State failed to adduce any evidence on this element, it failed to carry its burden of proof. Consequently, we must reverse this conviction.

3. Darwicki contends the evidence is insufficient to support her conviction for impeding the flow of traffic, OCGA § 40-6-184 (a) (1). We agree. It is axiomatic that one cannot impede the flow of traffic when there is no traffic to impede. Id. ("No person shall drive a motor vehicle at such a slow speed *as to impede the normal and reasonable movement of traffic*, except when reduced speed is necessary for safe operation.") (emphasis supplied); see also *Raulerson v. State*, 223 Ga. App. 556, 557-558 (2) (479 SE2d 386) (1996) ("defendant could not have been impeding the flow of traffic [because] there was no traffic on the road for defendant to impede"). Here, there is no evidence Darwicki was driving unusually slowly, or that any other cars attempted to pass her while she was stopped. Consequently, we must reverse this conviction.

*Judgment affirmed in part and reversed in part. Miller, J., concurs. Blackburn, P. J., concurs in the judgment only.*

DECIDED APRIL 18, 2008.

*Marny J. Heit*, for appellant.
*Barry E. Morgan*, Solicitor-General, *Molly W. Barrett*, Assistant Solicitor-General, for appellee.

standing any vehicle, whether attended or unattended, upon the roadway when it is practicable to stop, park, or so leave such vehicle off the roadway; but in every event, an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles, and a clear view of the stopped vehicle shall be available from a distance of 200 feet in each direction upon the highway.